URS FREI, the defendant.  Thereafter, in or about November 2008,
at the Los Angeles Attorney's office, Clients J and K completed
account opening documents for a new account to be held in the
name of White Tower Holdings, LLC, a corporation formed under
the laws of Nevis.  These documents included: (1) a Form A
stating that Clients J and K beneficially owned the White Tower
Holdings account; (2) copies of the U.S. passports of Clients J
and K; (3) a separate Wegelin form in which Clients J and K
falsely stated that White Tower Holdings was the "beneficial
owner of all income from US sources deposited in the above-
mentioned portfolio(s), in accordance with US tax law[]"; and
(4) even though the account was to be undeclared, Forms W-9 for
Clients J and K.  A Form W-9 is an IRS form through which U.S.
taxpayers can identify themselves as such to a bank, thereby
causing the bank to report the U.S. taxpayers' account income to
the IRS each year on Form 1099.  The Los Angeles Attorney then
sent the signed documents from the United States to Wegelin.

     55.  In or about November 2008, Clients J and K traveled to
Zurich and Client K met with URS FREI, the defendant, at
Wegelin.  FREI advised Client K that mail would not be sent to
Clients J and K in the United States.  FREI also advised that
ROGER KELLER, the defendant, would be FREI's secondary contact
at the bank in the event that FREI was unavailable.  The next

day, Clients J and K met with FREI again to discuss the wiring of their funds from UBS to Wegelin.

56.  On or about September 30, 2009, the undeclared account owned by Clients J and K at Wegelin held approximately $614,408.

### Clients L and M

57.  URS FREI, the defendant, was also the client advisor for an undeclared account held at Wegelin by Clients L and M, a married couple and co-conspirators not named as defendants herein.  At all times relevant to this Indictment, Clients L and M were U.S. citizens and residents of Florida.

58.  In or about December 2008, the UBS client advisor for Clients L and M notified them that they must close their undeclared UBS account, which they had held in the name of an entity called the Magabri Foundation, a sham entity formed under the laws of Liechtenstein.  The UBS client advisor further informed Clients L and M that they could open a new account at Wegelin.  The UBS client advisor spoke to URS FREI, the defendant, on behalf of Clients L and M and learned that Wegelin and FREI were willing to open a new account for them in the name of their sham entity, the Magabri Foundation.

59.  The UBS client advisor then arranged for, and accompanied Clients L and M to, a meeting with URS FREI, the defendant, at the Zurich Branch of Wegelin in or about January 2009.  At or about that time, FREI was informed that Clients L

and M were U.S. citizens living in Florida and that UBS was closing their account.

60.   On or about January 12, 2009, URS FREI, the defendant, and Wegelin opened two new undeclared accounts for Clients L and M in the name of the Magabri Foundation.  At or about that time, Wegelin accepted a Form A declaring that Clients L and M were the beneficial owners of the accounts.  Copies of their passports were attached to the Form A.  In addition, Wegelin promised not to send mail to Clients L and M in the United States, and FREI instructed Client L not to call him from the United States.  FREI lifted the instruction not to call from the United States in or about November 2009 after Client L notified FREI that he had voluntarily disclosed the Magabri Foundation accounts to the IRS.

61.   On or about December 31, 2009, the undeclared accounts owned by Clients L and M at Wegelin held approximately $2,729,318.

62.   Several of the undeclared U.S. taxpayer-clients of URS FREI, the defendant, and Wegelin are described in the following table.  None of these U.S. taxpayers timely reported their Wegelin accounts, or the income earned therein, to the IRS on Form 1040 or the FBAR where they were required to do so.

| Beneficial Owner(s) | Code Name(s) or Nominee Name(s) in which Wegelin Account(s) Held | Approximate Dates of UBS Account(s) | Approximate Date Wegelin Account(s) Opened | Approximate High Value of Wegelin Accounts |
|---|---|---|---|---|
| Client F | N1 PULTUSK | 1960s - 2008 | 08/2008 | $3,200,000 |
| Client G | N1 DREW | 1960s - 2008 | 08/2008 | $800,000 |
| Clients H and I | N5571 | 2006 - 2008 | 11/13/2008 | $1,105,593 |
| Clients J and K | White Tower Hold. | 1980s - 2008 | 11/6/2008 | $614,408 |
| Clients L and M | Magabri Foundation | 1997 - 2009 | 1/12/2009 | $2,729,318 |
| Clients N and O | Efraim Foundation | 1973 - 2008 | 06/2008 | $52,747,000 |
| Arthur Eisenberg | N1126 | 1983 - 2008 | 12/10/2008 | $2,234,608 |
| Total | | | | $60,980,927 |

### New Undeclared Accounts Opened at Wegelin by ROGER KELLER

63.  From in or about 2007 up through and including at least in or about 2010, ROGER KELLER, the defendant, and Wegelin opened and serviced undeclared accounts for dozens of U.S. taxpayers.  By in or about the end of 2008, KELLER managed undeclared accounts for at least 30 U.S. taxpayers holding approximately $120 million in total.

64.  In or about 2008 and 2009, ROGER KELLER, the defendant, and Wegelin opened new undeclared accounts for U.S. taxpayers leaving UBS, including the following:

### Client P

65.  ROGER KELLER, the defendant, served as the client advisor for an undeclared account maintained by Client P, a co-conspirator not named as a defendant herein, at Wegelin.  At all times relevant to this Indictment, Client P was a U.S. citizen and resident of Maryland.

66.   In or about 2008, UBS advised Client P that he must close his undeclared UBS account, which he had maintained since in or about 1970.  Because Client P's deteriorating health did not permit him to travel to Switzerland, Client P's son, a co-conspirator not named as a defendant herein, traveled to Zurich in or about November 2008 to close Client P's UBS account and identify another Swiss private bank that would open a new undeclared account for Client P.  The UBS client advisor referred Client P's son to Wegelin and two other Swiss banks.

67.   On or about November 3, 2008, Client P's son walked into the Zurich Branch of Wegelin without an appointment and asked to open an account.  ROGER KELLER, the defendant, interviewed Client P's son.  Client P's son told KELLER that he and Client P were U.S. citizens who lived in the United States and that Client P had maintained an account for many years at UBS.

68.   On or about the following day, November 4, 2008, ROGER KELLER, the defendant, with the approval of Managing Partner A, opened a new undeclared account in the name of Client P's son. At or about that time, Wegelin accepted a Form A falsely stating that Client P's son, who lived in Manhattan, was the sole beneficial owner of the account.  Wegelin promised not to send account statements or other mail relating to the account to the United States.

69.   On or about September 30, 2009, Client P's undeclared account at Wegelin held approximately $732,938.

### Client Q

70.   ROGER KELLER, the defendant, was also the client advisor for an undeclared account owned by Client Q, a co-conspirator not named as a defendant herein, at Wegelin.   At all times relevant to this Indictment, Client Q was a U.S. citizen and resident of California.

71.   In or about December 2008, Client Q's UBS client advisor informed him that he must close his undeclared UBS account, which he had owned since in or about 1987.   Thereafter, Client Q's previous UBS client advisor told him that Wegelin was willing to open new undeclared accounts for U.S. taxpayers.

72.   In or about January 2009, because Client Q was unable for health reasons to travel to Zurich to close his UBS account, Client Q's son, a co-conspirator not named as a defendant herein, traveled in his place.   Client Q's previous UBS client advisor set up an appointment at Wegelin and accompanied Client Q's son to meet with ROGER KELLER, the defendant, and a Zurich Branch supervisor on or about January 5, 2009.   At this initial meeting, KELLER and the supervisor interviewed Client Q's son about his personal background, the source of the funds, and the amount that he wished to deposit, among other things.   Client Q's son told KELLER and the supervisor that he was a U.S.

citizen and that he wanted to transfer approximately $7 million from UBS to Wegelin.

73.   Later that day, ROGER KELLER, the defendant, advised Client Q's son by telephone that Wegelin would open an account for him.   Client Q's son then returned to the bank and completed various paperwork.   At or about that time, KELLER asked Client Q's son whether he wanted to complete an IRS Form W-9, which, if completed, would cause Wegelin to file a Form 1099 with the IRS to report the income in Client Q's account in a given year. Client Q's son told KELLER that he did not wish to complete the Form W-9.   In addition, KELLER agreed that Wegelin would not send mail relating to the account to the United States.   In the context of a conversation about the demise of UBS's cross-border banking business, KELLER told Client Q's son that Wegelin was the oldest bank in Switzerland.   KELLER did so to assure him that Wegelin would not disclose Client Q's identity or account information to the IRS.

74.   In or about September 2009, Client Q and his son traveled to Zurich and met with ROGER KELLER, the defendant, and a lawyer representing Wegelin.   In the context of a discussion about the August 2009 Agreement that would result in the disclosure of 4,450 UBS account files to the IRS, KELLER and the Wegelin lawyer assured Client Q and his son that Client Q's

account was safe and that their names would not be released to the United States authorities.

75.   On or about March 31, 2010, Client Q's undeclared account at Wegelin held approximately $7,173,679.

76.   Client P, Client Q, and other undeclared U.S. taxpayer-clients of ROGER KELLER, the defendant, and Wegelin are described in the following table.  None of these U.S. taxpayers timely reported their Wegelin accounts, or the income earned therein, to the IRS on Form 1040 or the FBAR where they were required to do so.

| Beneficial Owner(s) | Code Name(s) or Nominee Name(s) in which Wegelin Account(s) Held | Approx. Dates of UBS Account(s) | Approx. Date Wegelin Account(s) Opened | Approximate High Value of Wegelin Accounts |
|---|---|---|---|---|
| Client P | Client P's Son | 1970-2008 | 2008 | $732,938 |
| Client Q | Client Q's Son | 1987-2009 | 1/5/2009 | $7,173,679 |
| Clients R & S | Client R's Advisor | 1970s | 12/19/2008 | $3,667,724 |
| Clients T & U | TMT Family Foundation | 1981-2008 | 11/2008 | $1,247,649 |
| Total | | | | $12,821,990 |

### New Undeclared Accounts Opened by Client Advisor A

77.   From in or about 2005 up through and including in or about 2010, Client Advisor A opened and serviced U.S. taxpayer-clients with undeclared accounts at Wegelin, including the following:

### Client V

78.   For example, Client Advisor A opened and maintained an undeclared account for Client V, a co-conspirator not named as a defendant herein, at Wegelin.  Client V was, at all times

relevant to this Indictment, a U.S. citizen and resident of
Florida.

79.   Beginning in or about 2005, Client V owned undeclared
accounts at UBS and Swiss Bank B.  In or about 2008 and 2009,
both UBS and Swiss Bank B required Client V to close his
undeclared accounts.

80.   On or about April 14, 2009, Client V's client advisor
at Swiss Bank B informed Client V that Wegelin was opening new
undeclared accounts for U.S. taxpayers who were fleeing Swiss
Bank B.  Client V then walked to the Zurich Branch of Wegelin
without an appointment and asked to open an account.

81.   At or about that time, Client Advisor A interviewed
Client V about his personal background and the source of his
funds, among other things.  Client V told Client Advisor A that
UBS and Swiss Bank B were closing his accounts; showed Client
Advisor A his U.S. passport; and told Client Advisor A that he
wished to deposit approximately $5.7 million at Wegelin.  Client
Advisor A, with the express approval of Managing Partner A,
agreed to open the account through a "structure" -- that is, a
sham offshore entity -- rather than in Client V's own name.

82.   To establish the "structure," on or about that same
day, April 14, 2009, Client Advisor A invited an employee of a
Swiss company that provides tax and legal services ("Swiss Trust
Advisor A") to meet with Client V.  At that meeting, Swiss Trust

Advisor A sold to Client V an off-the-shelf sham entity called the Nitro Foundation. Client Advisor A, in turn, opened a new account at Wegelin for Client V in the name of the Nitro Foundation. In written materials that Swiss Trust Advisor A provided to Wegelin, Swiss Trust Advisor A acknowledged that Client V's account would be undeclared. At or about that time, Wegelin accepted a Form A declaring that Client V, a U.S. citizen and resident of Florida, was the beneficial owner of the Nitro Foundation account. In addition, Wegelin promised that it would not send mail to Client V in the United States. Thereafter, Client V instructed UBS and the Swiss Bank B to transfer his funds to the Nitro Foundation account at Wegelin. Based on the advice of Client V's client advisors at UBS and Swiss Bank B, the funds were transferred in Swiss francs so that the transactions would occur entirely in Switzerland, thereby reducing the risk that the IRS would detect the account.

83. At or about that time, Client Advisor A instructed Client V to use text messages to communicate with him, rather than telephone calls, because U.S. law enforcement authorities did not yet have the ability to track the huge volume of text messages that were written around the world. In addition, Client Advisor A assured Client V that his account would remain safe at Wegelin because the bank was very old, had a rich tradition, and did not do business in the United States.

84.   In or about June 2009, Client Advisor A met with Client V in Miami, Florida.

85.   On or about October 15, 2009, Client V's undeclared account at Wegelin held approximately $4,175,000.

### Client W

86.   Client Advisor A also opened an undeclared account for Client W, a co-conspirator not named as a defendant herein. Client W was, at all times relevant to this Indictment, a U.S. citizen who lived in California.

87.   In or about 2008, UBS advised Client W that his undeclared UBS account would be closed.  In or about the following month, Client W asked Swiss Trust Advisor A how he could continue to maintain an undeclared account in Switzerland. Swiss Trust Advisor A referred Client W to Wegelin and accompanied him to meet Client Advisor A at Wegelin's Zurich Branch.

88.   At this meeting, Client Advisor A interviewed Client W about his personal background, the source of his funds, and the history of his UBS account, among other things.  Client W told Client Advisor A that he was a U.S. citizen, showed his passport, and said that UBS was closing his account.  Client Advisor A told Client W that Wegelin would not have UBS's problems with the IRS because Wegelin did not have branches in the United States.

36

89.   On or about December 19, 2008, Client W returned to the Zurich office of Wegelin met with Client Advisor A, and opened an account in the name of Herzen Resources S.A., a sham Panama corporation that Client W had bought from Swiss Trust Advisor A.   At or about that time, Wegelin accepted a Form A declaring that Client W beneficially owned the Herzen Resources account.   In addition, Wegelin promised not to send mail to Client W in the United States.

90.   In or about the summer of 2009, Client Advisor A told Client W that Wegelin had stopped opening new accounts for U.S. clients, and that Client W was lucky that he had been able to open the Herzen Resources account.

91.   On or about September 30, 2009, Client W's undeclared account at Wegelin held approximately $8,685,502.

### Undeclared Wegelin Accounts Managed by Independent Asset Managers and Financial Intermediaries

92.   Separate and apart from the undeclared accounts that Wegelin opened and managed directly for U.S. taxpayers through its Client Advisors, Wegelin also acted as a custodian with respect to undeclared accounts that were managed by independent asset managers and financial intermediaries, including the following:

## Kenneth Heller

93.  At all times relevant to this Indictment, Kenneth Heller, a co-conspirator not named as a defendant herein, was a U.S. citizen who lived and worked primarily in Manhattan.  In or about December 2005 and January 2006, Heller opened an undeclared account at UBS and funded it with approximately $26,420,822 wired from the United States.

94.  On or about June 6, 2008, Heller became concerned about the IRS's investigation into UBS's cross-border banking business and faxed a news article about the investigation to his UBS client advisor ("UBS Client Advisor A").

95.  On or about June 21, 2008, Heller retained an independent asset manager based in Liechtenstein ("Liechtenstein Asset Manager A") to manage a new undeclared account that Heller opened at Wegelin at or about that time.  Over the next several months, Heller funded this account with approximately $19 million wired from UBS.  In order to protect Heller, the account was opened in the name of Nathelm Corporation, according to a September 9, 2008 letter sent to Heller's tax preparer by an attorney working for Heller ("Heller Attorney A").  This letter further stated:

> All Heller money was transferred directly from UBS to Wegelin. . . . The problem is the US Government interference with Swiss Banks, in [an] attempt to seize income tax evaders. . . . The US Government gladly pressed its case with Swiss Govt for bank

disclosure of US citizens, etc.  This is why KH left
UBS[.]

96.  On or about August 22, 2008, among other occasions,
Liechtenstein Asset Manager A faxed to Heller's office in
Manhattan account statements and other documents relating to
Heller's undeclared account at Wegelin.

97.  On or about October 2, 2008, Heller Attorney A faxed
instructions from Heller's office in Manhattan to Wegelin
directing Wegelin to wire approximately $50,000 to a U.S. bank
account that HELLER controlled.

98.  On various occasions in or about 2008 and 2009, in
response to telephone and fax requests from Heller to
Liechtenstein Asset Manager A, Wegelin issued multiple checks
drawn on the Stamford Correspondent Account for the benefit of
Heller.  For example, as set forth in the table accompanying
paragraph 137, on or about July 8, 2009, Wegelin issued
approximately 12 checks for Heller's benefit, each in the amount
of $2,500.  Liechtenstein Asset Manager A sent these checks to
Heller in the United States.

99.  On or about December 31, 2008, Heller's undeclared
account at Wegelin held approximately $18,466,686.

### Clients X and Y

100. Beda Singenberger served as the independent asset
manager for numerous U.S. taxpayers holding undeclared accounts

at Wegelin, including Clients X and Y, co-conspirators not named as defendants herein. At all times relevant to this Indictment, Clients X and Y, a married couple, were citizens and residents of the United States.

101. On or about April 8, 2002, Singenberger opened an undeclared account at Wegelin for Clients X and Y in the name of Berry Trust, a sham Liechtenstein foundation. At or about that time, Wegelin accepted a Form A stating that Clients X and Y beneficially owned the Berry Trust account. At or about that time, Wegelin accepted another bank form falsely declaring that Berry Trust beneficially owned the Berry Trust account. At the top of this false form, the letters "BNQ" were written to ensure that this account was correctly coded in Wegelin's computer system as an undeclared account.

102. In or about 2003, Singenberger opened a second account for Client X, at Wegelin, this time in the name of Asset Champion, Ltd., a sham Hong Kong corporation.

103. Thereafter, until in or about 2009, Singenberger managed the assets held by Clients X and Y at Wegelin. On or about December 31, 2003, the combined value of these undeclared accounts was approximately $6,133,000.

### Client Z

104. Singenberger also managed the assets for an undeclared account that Client Z, a co-conspirator not named as a defendant

herein, held at Wegelin.   At all times relevant to this Indictment, Client Z was a U.S. citizen and resident.

105. On or about October 1, 2004, Singenberger opened an account for Client Z at Wegelin in the name of Eagle Elite Investments, Ltd., a sham Hong Kong corporation.   At or about that time, Wegelin accepted a Form A stating that Client Z beneficially owned the Eagle Elite Investments account.   At or about that time, Wegelin also accepted another bank form falsely declaring that Eagle Elite Investments beneficially owned the account.

106.  In or about 2009, Client Z held approximately $232,435 in his undeclared account at Wegelin.

107. Several U.S. taxpayer-clients whose undeclared accounts at Wegelin were managed by independent asset managers are described in the following table.   These U.S. taxpayers did not timely report their accounts at Wegelin (or the income earned therein), to the IRS on Form 1040 or the FBAR where they were required to do so.

| Beneficial Owner(s) | Code Name(s) or Nominee Name(s) in which Wegelin Account(s) Held | Approx. Date Wegelin Account(s) Opened | Approx. High Value of Wegelin Account(s) |
|---|---|---|---|
| Kenneth Heller | Nathelm Corp. | 12/2005 | $18,466,686 |
| Clients X & Y | Berry Trust, Asset Champion Ltd | 4/10/2002 | $6,133,000 |
| Client Z | Eagle Elite Investments Ltd. | 10/1/2004 | $232,435 |
| Client AA | Levina Trust | 4/10/2002 | $776,090 |
| Client BB | N 466 | 2005 | $55,496 |
| Client CC & DD | Nema Trust; Grand Dynamic Invest.; Top Harbour Properties | 2002; 6/23/2003; 6/6/2005 | $4,439,666 |
| Michael Reiss | Floranova Foundation; Upside International | 9/11/2003; 11/2008 | $2,588,470 |
| Total | | | $32,691,843 |

## The Repatriation of Undeclared Funds
## Through the Stamford Correspondent Account

108. From at least in or about 2005 up through and including in or about 2011, Wegelin used its Stamford Correspondent Account not only to help its own U.S. taxpayer-clients repatriate undeclared funds to the United States without detection by the IRS but also to help U.S. taxpayer-clients of at least two other Swiss banks accomplish the same unlawful ends.  For example:

## Client EE

109. At all times relevant to this Indictment, Client EE, a co-conspirator not named as a defendant herein, was a resident of New Jersey and a citizen of the United States.

110. In or about 2008, Client EE opened an undeclared account at Wegelin and funded it through a transfer from Swiss Bank B, where he had held an undeclared account since in or

42

about the 1980s.  Client EE's new undeclared account at Wegelin was managed by an independent asset manager in Switzerland ("Independent Asset Manager A").

111. In or about 2010, Client EE traveled to Africa for a safari.  To pay for the safari, by arrangement with Independent Asset Manager A, Client EE sent a letter with no return address from New Jersey to Independent Asset Manager A in Switzerland. The envelope contained a single piece of paper on which Client EE had written only the amount of money Client EE needed to wire to the safari company, namely, approximately $37,000.  At or about that time, Client EE sent a second and separate letter to Independent Asset Manager A containing only the wire transfer details for the safari company's bank account in Botswana. Thereafter, pursuant to these instructions, on or about June 22, 2010, Wegelin wired approximately $37,000 through the Stamford Correspondent Account to the safari company's bank account in Botswana.

112. In or about December 2009, Client EE's undeclared account at Wegelin held approximately $847,844.

### Client FF

113. At all times relevant to this Indictment, Client FF, a co-conspirator not named as a defendant herein, was a resident of Connecticut and a citizen of the United States.

114. In or about 2006, Client FF inherited funds held in an undeclared account at Wegelin.

115. On various occasions from in or about 2007 up through and including in or about 2011, Wegelin wired a total of approximately $324,955 in increments less than $10,000 through the Stamford Correspondent Account to Client FF in the United States, as described in the table accompanying paragraph 137.

116. On or about December 31, 2008, Client FF's undeclared account at Wegelin held approximately $637,395.

### Client GG

117. At all times relevant to this Indictment, Client GG, a co-conspirator not named as a defendant herein, was a resident of Westchester County, New York, and a citizen of the United States.

118. In or around 2006, Client GG transferred undeclared funds that he had held at a Swiss bank since in or about the early 1990s to a new undeclared account at Wegelin. The new undeclared account was held in the name of Birkdale Universal, S.A., a sham entity established under the laws of Panama (the "Birkdale Account"). Client GG's Client Advisor was URS FREI, the defendant. FREI explained to Client GG that the purpose of placing the assets in the name of Birkdale was to further conceal Client GG's ownership of the funds. Later, when Client GG discussed the U.S. government's investigation of UBS with

FREI, FREI said that because Wegelin had no offices outside Switzerland, Wegelin was less vulnerable to U.S. law enforcement pressure than UBS.

119. In addition, Client GG maintained two "declared accounts" at Wegelin – that is, accounts that were known to the IRS because Client GG had submitted a Form W-9 to Wegelin, causing Wegelin to file a Form 1099 with the IRS each year reporting the income earned in the accounts.

120. In or about August 2007, URS FREI, the defendant, and Wegelin used the Stamford Correspondent Account to conceal FREI's unlawful hand delivery of approximately $16,000 in U.S. currency to another FREI U.S. taxpayer-client ("FREI's Other Client").  On or about August 8 and August 9, 2007, FREI and Wegelin used the Stamford Correspondent Account to wire approximately $16,000 in total from one of Client GG's declared Wegelin accounts to Client GG's U.S. bank account in Westchester County.  The $16,000 transfer was divided into two wires of $8,000 on back-to-back days to further conceal the transaction. Thereafter, at FREI's request, Client GG withdrew approximately $16,000 in U.S. currency from his Westchester County account. On or about August 21, 2007, Client GG carried this $16,000 in cash with him to a lunch meeting in Manhattan with FREI, again at FREI's request.  At the lunch, Client GG handed FREI an unmarked envelope containing the $16,000.  During the lunch, the

head waiter informed FREI that someone else at the restaurant wished to speak with him.  FREI then excused himself from Client GG, walked to the other side of the restaurant, and met with FREI's Other Client for approximately 10 minutes.  At or about that time, FREI gave the Other Client the cash-filled unmarked envelope that Client GG had given to FREI moments earlier.  FREI then returned to Client GG and noted that it was becoming increasingly difficult to move funds out of Switzerland, and that, to do so, he employed this technique of transferring cash directly between his clients.  Thereafter, FREI credited approximately $16,000 to Client GG's undeclared account at Wegelin -- the Birkdale Account.

121. In or about 2010, Client GG's undeclared account at Wegelin held approximately $898,652.

### Client HH

122. At all times relevant to this Indictment, Client HH, a co-conspirator not named as a defendant herein, was a resident of Connecticut and a citizen of the United States.

123. Beginning in or about the 1990s, Client HH maintained an undeclared account at UBS.  In or about 2003, Client HH and her Swiss independent asset manager ("Independent Asset Manager B") transferred her UBS funds to an undeclared account at Wegelin.

124. On various occasions from in or about 2003 up through and including in or about 2009, Client HH traveled to Switzerland and withdrew funds from her undeclared account at Wegelin with the help of Independent Asset Manager B. Independent Asset Manager B advised Client HH not to carry more than $10,000 into the United States at any one time.

125. On various occasions from in or about 2003 up to and including in or about 2009, Independent Asset Manager B met Client HH for dinner in Manhattan.  When he did so, he sometimes gave her U.S. currency withdrawn from her undeclared account at Wegelin.

126. On various occasions from in or about 2005 up through and including in or about 2009, Wegelin issued checks to Client HH drawn on the Stanford Correspondent Account.  As set forth in the table accompanying paragraph 137, Wegelin issued multiple checks in this manner, each for less than $10,000 to further conceal Client HH's undeclared account, for a total of approximately $79,500.

127. As of December 2007, Client HH's undeclared account at Wegelin held approximately $177,095.

### Client II

128. At all times relevant to this Indictment, Client II, a co-conspirator not named as a defendant herein, was a resident of Arizona and a citizen of the United States.

129. Beginning in or about 2010, Client II maintained an undeclared account at Swiss Bank C.

130. In or about 2010, Client II asked his client advisor at Swiss Bank C ("Swiss Bank C Client Advisor") to send him several batches of checks at regular intervals, three checks at a time, each for less than $5,000, payable to a company that Client II controlled ("Client II's Company"). Client II further requested that the checks "be drawn in the U.S. dollars on your corresponding US bank" and noted that the checks would be cashed over time.

131. Thereafter, from in or about December 2010 up through and including in or about March 2011, Wegelin issued approximately five checks drawn on the Stamford Correspondent Account payable to Client II's Company and provided them to the Swiss Bank C Client Advisor, who, in turn, sent them to Client II in Arizona. Wegelin issued the checks, which are set forth in the table accompanying paragraph 137, in amounts less than $5,000, for a total of $21,088.

132. As of in or about October 2010, Client II's undeclared Swiss Bank C account held approximately $2,183,606.

### Client JJ

133. At all times relevant to this Indictment, Client JJ, a co-conspirator not named as a defendant herein, was a resident of Arizona and a citizen of the United States.

134. Beginning in or about the 1990s, Client JJ maintained an undeclared account at Swiss Bank B.  In or about late 2009, Swiss Bank B informed him that he had to close his account.  He then traveled to Switzerland and opened an undeclared account at Swiss Bank C with the help of the Swiss Bank C Client Advisor.

135. Thereafter, from in or about October 2009 up through and including in or about March 2011, Wegelin issued five checks drawn on the Stamford Correspondent Account payable to Client JJ, each in the amount of approximately $45,000, as set forth in the table accompanying paragraph 137.

136. As of July 2011, Client JJ's undeclared Swiss Bank C account held approximately $6,700,000.

137. Certain checks and wire transfers that Wegelin issued and executed through the Stamford Correspondent Account on behalf of U.S. taxpayers with undeclared accounts at Wegelin, Swiss Bank C, and Swiss Bank D, for a total of approximately $1,417,626, are listed in the following table.  None of these U.S. taxpayers timely reported such accounts, or the income earned therein, to the IRS on Form 1040 or the FBAR where they were required to do so.

| Check # (or wire) | Check/ Wire date | Approx. amount | Undeclared U.S. taxpayer | Swiss bank where U.S. taxpayer's account was held |
|---|---|---|---|---|
| 2184 | 3/10/2005 | $  5,621.00 | Client KK | Swiss Bank D |
| 2217 | 4/20/2005 | $  5,000.00 | Client HH | Wegelin |
| 2252 | 6/23/2005 | $  9,367.00 | Client KK | Swiss Bank D |
| 2331 | 10/11/2005 | $  7,863.00 | Client KK | Swiss Bank D |
| 2399 | 1/9/2006 | $ 32,250.00 | Client KK | Swiss Bank D |

49

| Check # (or wire) | Check/ Wire date | Approx. amount | Undeclared U.S. taxpayer | Swiss bank where U.S. taxpayer's account was held |
|---|---|---|---|---|
| 2423 | 2/7/2006 | $ 26,675.00 | Client KK | Swiss Bank D |
| 2448 | 3/15/2006 | $ 7,570.00 | Client KK | Swiss Bank D |
| 2490 | 5/16/2006 | $ 8,250.00 | Client KK | Swiss Bank D |
| 2547 | 7/26/2006 | $ 2,900.00 | Client KK | Swiss Bank D |
| 2591 | 9/7/2006 | $ 8,000.00 | Client KK | Swiss Bank D |
| 2634 | 11/7/2006 | $ 9,827.00 | Client KK | Swiss Bank D |
| 2635 | 11/8/2006 | $ 5,000.00 | Client HH | Wegelin |
| 2636 | 11/13/2006 | $ 5,000.00 | Client HH | Wegelin |
| 2726 | 2/8/2007 | $ 8,730.00 | Client KK | Swiss Bank D |
| Wire | 3/30/2007 | $ 8,000.00 | Client FF | Wegelin |
| 2791 | 4/25/2007 | $ 8,200.00 | Client KK | Swiss Bank D |
| Wire | 4/27/2007 | $ 8,000.00 | Client FF | Wegelin |
| Wire | 8/8/2007 | $ 8,000.00 | Client GG | Wegelin |
| Wire | 8/9/2007 | $ 8,000.00 | Client GG | Wegelin |
| 3152 | 11/13/2007 | $ 5,000.00 | Client HH | Wegelin |
| 3253 | 3/13/2008 | $ 5,000.00 | Client KK | Swiss Bank D |
| Wire | 4/1/2008 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 4/15/2008 | $ 4,000.00 | Client FF | Wegelin |
| Wire | 5/1/2008 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 5/15/2008 | $ 4,000.00 | Client FF | Wegelin |
| Wire | 5/30/2008 | $ 2,000.00 | Client FF | Wegelin |
| 3283 | 5/30/2008 | $ 8,500.00 | Client HH | Wegelin |
| Wire | 6/13/2008 | $ 4,000.00 | Client FF | Wegelin |
| Wire | 7/1/2008 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 7/15/2008 | $ 4,000.00 | Client FF | Wegelin |
| Wire | 8/1/2008 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 8/15/2008 | $ 4,000.00 | Client FF | Wegelin |
| Wire | 8/29/2008 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 9/15/2008 | $ 4,000.00 | Client FF | Wegelin |
| Wire | 10/1/2008 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 10/31/2008 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 11/14/2008 | $ 4,000.00 | Client FF | Wegelin |
| 3416 | 11/25/2008 | $ 8,500.00 | Client A | Wegelin |
| 3417 | 11/25/2008 | $ 8,500.00 | Client A | Wegelin |
| 3418 | 11/25/2008 | $ 8,500.00 | Client A | Wegelin |
| 3421 | 11/28/2008 | $ 8,500.00 | Client HH | Wegelin |
| Wire | 12/1/2008 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 12/15/2008 | $ 4,000.00 | Client FF | Wegelin |
| Wire | 12/31/2008 | $ 2,000.00 | Client FF | Wegelin |
| 3468 | 1/5/2009 | $ 8,500.00 | Client A | Wegelin |
| 3469 | 1/5/2009 | $ 8,500.00 | Client A | Wegelin |
| 3470 | 1/5/2009 | $ 8,500.00 | Client A | Wegelin |
| Wire | 1/6/2009 | $ 11,000.00 | Client A | Wegelin |
| Wire | 1/15/2009 | $ 4,000.00 | Client FF | Wegelin |
| 3483 | 1/26/2009 | $ 8,500.00 | Client HH | Wegelin |
| Wire | 1/30/2009 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 2/13/2009 | $ 4,000.00 | Client FF | Wegelin |
| 3510 | 2/26/2009 | $ 8,500.00 | Client A | Wegelin |
| 3512 | 2/26/2009 | $ 8,500.00 | Client A | Wegelin |
| 3511 | 2/26/2009 | $ 8,500.00 | Client A | Wegelin |
| 3509 | 2/26/2009 | $ 8,500.00 | Client HH | Wegelin |

| Check # (or wire) | Check/ Wire date | Approx. amount | Undeclared U.S. taxpayer | Swiss bank where U.S. taxpayer's account was held |
|---|---|---|---|---|
| Wire | 2/27/2009 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 3/13/2009 | $ 4,000.00 | Client FF | Wegelin |
| 3532 | 3/25/2009 | $ 8,500.00 | Client HH | Wegelin |
| Wire | 4/1/2009 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 4/15/2009 | $ 4,000.00 | Client FF | Wegelin |
| Wire | 4/21/2009 | $ 20,000.00 | Client A | Wegelin |
| 3552 | 4/21/2009 | $ 8,500.00 | Client A | Wegelin |
| 3553 | 4/21/2009 | $ 8,500.00 | Client A | Wegelin |
| 3554 | 4/21/2009 | $ 8,500.00 | Client A | Wegelin |
| 3556 | 4/24/2009 | $ 8,500.00 | Client HH | Wegelin |
| Wire | 5/1/2009 | $ 2,000.00 | Client FF | Wegelin |
| Wire | 5/15/2009 | $ 4,000.00 | Client FF | Wegelin |
| Wire | 5/22/2009 | $ 4,000.00 | Client FF | Wegelin |
| 3568 | 5/25/2009 | $ 8,500.00 | Client HH | Wegelin |
| Wire | 6/1/2009 | $ 2,000.00 | Client FF | Wegelin |
| 3571 | 6/8/2009 | $ 10,000.00 | K. Heller | Wegelin |
| Wire | 6/11/2009 | $ 6,000.00 | Client FF | Wegelin |
| Wire | 6/15/2009 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 7/1/2009 | $ 3,500.00 | Client FF | Wegelin |
| 3592 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3583 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3587 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3586 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3589 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3590 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3588 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3591 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3593 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3595 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3585 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| 3584 | 7/8/2009 | $ 2,500.00 | K. Heller | Wegelin |
| Wire | 7/13/2009 | $ 24,000.00 | Client A | Wegelin |
| Wire | 7/15/2009 | $ 4,665.00 | Client FF | Wegelin |
| 3623 | 7/16/2009 | $ 2,500.00 | K. Heller | Wegelin |
| Wire | 7/20/2009 | $ 24,000.00 | Client A | Wegelin |
| Wire | 7/31/2009 | $ 3,500.00 | Client FF | Wegelin |
| Wire | 8/14/2009 | $ 4,665.00 | Client FF | Wegelin |
| 3660 | 8/25/2009 | $ 5,500.00 | Client A | Wegelin |
| 3659 | 8/25/2009 | $ 8,500.00 | Client A | Wegelin |
| Wire | 9/1/2009 | $ 3,500.00 | Client FF | Wegelin |
| 3736 | 9/11/2009 | $ 37,813.97 | K. Heller | Wegelin |
| Wire | 9/15/2009 | $ 20,000.00 | Client A | Wegelin |
| Wire | 9/15/2009 | $ 4,665.00 | Client FF | Wegelin |
| 3747 | 9/22/2009 | $ 25,000.00 | K. Heller | Wegelin |
| 3746 | 9/22/2009 | $ 50,000.00 | K. Heller | Wegelin |
| 3745 | 9/22/2009 | $ 50,000.00 | K. Heller | Wegelin |
| 3744 | 9/22/2009 | $ 50,000.00 | K. Heller | Wegelin |
| 3750 | 9/24/2009 | $ 16,000.00 | K. Heller | Wegelin |
| Wire | 10/1/2009 | $ 3,500.00 | Client FF | Wegelin |
| 3778 | 10/2/2009 | $ 7,250.00 | K. Heller | Wegelin |
| 3779 | 10/2/2009 | $ 500.00 | K. Heller | Wegelin |

| Check # (or wire) | Check/ Wire date | Approx. amount | Undeclared U.S. taxpayer | Swiss bank where U.S. taxpayer's account was held |
|---|---|---|---|---|
| 3794 | 10/13/2009 | $ 2,498.04 | K. Heller | Wegelin |
| Wire | 10/15/2009 | $ 4,665.00 | Client FF | Wegelin |
| 3796 | 10/21/2009 | $ 45,000.00 | Client JJ | Swiss Bank C |
| Wire | 10/30/2009 | $ 3,500.00 | Client FF | Wegelin |
| Wire | 11/13/2009 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 12/1/2009 | $ 3,500.00 | Client FF | Wegelin |
| Wire | 12/15/2009 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 1/4/2010 | $ 3,500.00 | Client FF | Wegelin |
| Wire | 1/15/2010 | $ 4,665.00 | Client FF | Wegelin |
| 3926 | 1/22/2010 | $ 45,000.00 | Client JJ | Swiss Bank C |
| Wire | 2/1/2010 | $ 3,500.00 | Client FF | Wegelin |
| Wire | 2/12/2010 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 3/1/2010 | $ 3,500.00 | Client FF | Wegelin |
| Wire | 3/9/2010 | $ 100,000.00 | Client A | Wegelin |
| Wire | 3/15/2010 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 4/1/2010 | $ 3,500.00 | Client FF | Wegelin |
| 4060 | 4/6/2010 | $ 45,000.00 | Client JJ | Swiss Bank C |
| Wire | 4/15/2010 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 4/30/2010 | $ 3,500.00 | Client FF | Wegelin |
| Wire | 5/14/2010 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 6/1/2010 | $ 3,500.00 | Client FF | Wegelin |
| Wire | 6/15/2010 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 6/22/2010 | $ 37,000.00 | Client EE | Wegelin |
| Wire | 7/15/2010 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 8/13/2010 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 8/13/2010 | $ 7,358.00 | Client EE | Wegelin |
| Wire | 8/18/2010 | $ 18,910.00 | Client EE | Wegelin |
| Wire | 9/15/2010 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 10/15/2010 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 11/15/2010 | $ 4,665.00 | Client FF | Wegelin |
| 4361 | 12/9/2010 | $ 4,833.00 | Client II | Swiss Bank C |
| 4363 | 12/10/2010 | $ 4,922.00 | Client II | Swiss Bank C |
| Wire | 12/15/2010 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 1/14/2011 | $ 4,665.00 | Client FF | Wegelin |
| 4411 | 1/25/2011 | $ 45,000.00 | Client JJ | Swiss Bank C |
| 4416 | 1/28/2011 | $ 3,600.00 | Client II | Swiss Bank C |
| 4417 | 1/28/2011 | $ 2,850.00 | Client II | Swiss Bank C |
| Wire | 2/15/2011 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 3/15/2011 | $ 4,665.00 | Client FF | Wegelin |
| 4483 | 3/17/2011 | $ 4,883.00 | Client II | Swiss Bank C |
| 4489 | 3/23/2011 | $ 45,000.00 | Client JJ | Swiss Bank C |
| Wire | 4/15/2011 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 5/13/2011 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 6/15/2011 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 7/15/2011 | $ 4,665.00 | Client FF | Wegelin |
| Wire | 8/15/2011 | $ 4,665.00 | Client FF | Wegelin |
| TOTAL | | $ 1,417,626.01 | | |

## Statutory Allegations

138. From at least in or about 2002 up through and
including in or about 2011, in the Southern District of New York
and elsewhere, MICHAEL BERLINKA, URS FREI, and ROGER KELLER, the
defendants, together with Wegelin, Managing Partner A, Executive
A, Client Advisor A, Beda Singenberger, Gian Gisler, Clients A
through JJ, and others known and unknown, willfully and
knowingly did combine, conspire, confederate, and agree together
and with each other to defraud the United States of America and
an agency thereof, to wit, the IRS, and to commit offenses
against the United States, to wit, violations of Title 26,
United States Code, Sections 7206(1) and 7201.

139. It was a part and an object of the conspiracy that
MICHAEL BERLINKA, URS FREI, and ROGER KELLER, the defendants,
together with others known and unknown, willfully and knowingly
would and did defraud the United States of America and the IRS
for the purpose of impeding, impairing, obstructing, and
defeating the lawful governmental functions of the IRS in the
ascertainment, computation, assessment, and collection of
revenue, to wit, federal income taxes.

140. It was further a part and an object of the conspiracy
that various U.S. taxpayer-clients of MICHAEL BERLINKA, URS
FREI, and ROGER KELLER, the defendants, together with others
known and unknown, willfully and knowingly would and did make

53

and subscribe returns, statements, and other documents, which contained and were verified by written declarations that they were made under the penalties of perjury, and which these U.S. taxpayer-clients, together with others known and unknown, did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

141. It was further a part and an object of the conspiracy that MICHAEL BERLINKA, URS FREI, and ROGER KELLER, the defendants, together with others known and unknown, willfully and knowingly would and did attempt to evade and defeat a substantial part of the income tax due and owing to the United States by certain of Wegelin's U.S. taxpayer clients, in violation of Title 26, United States Code, Section 7201.

### Overt Acts

142. In furtherance of the conspiracy and to effect its illegal objects, MICHAEL BERLINKA, URS FREI, ROGER KELLER, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.  In or about September 2008, BERLINKA opened a new undeclared account in the name of Client A.

b.  On or about November 25, 2008; January 5, 2009; February 26, 2009; April 21, 2009; and August 25, 2009, BERLINKA

sent multiple checks drawn on the Stamford Correspondent Account to Client A in the United States.

c.  On various occasions from in or about 2003 up to and including in or about 2009, Independent Asset Manager B met Client HH for dinner in Manhattan and gave her U.S. currency withdrawn from her undeclared Wegelin account.

d.  On or about August 8 and August 9, 2007, FREI wired approximately $16,000 in two transactions to Client GG's U.S. bank account in Westchester County.

e.  On or about August 21, 2007, at a restaurant in Manhattan, Client GG provided approximately $16,000 in U.S. currency to FREI, who then provided it to FREI's Other Client.

f.  On or about November 4, 2008, KELLER opened a new undeclared account in the name of Client P's son, a resident of Manhattan, for the purpose of helping Client P hide assets and income from the IRS.

g.  On or about January 5, 2009, Client Q's son told KELLER that he did not wish to complete an IRS Form W-9, and KELLER agreed that Wegelin would not send mail relating to Client Q's account to the United States.

h.  On or about October 2, 2008, Kenneth Heller caused his employee to send, by fax and U.S. mail, instructions from Manhattan to Wegelin directing it to wire approximately $50,000 to an account that Heller controlled in the United States.

i.  On various dates from in or about 2006 up through and including in or about 2009, BERLINKA, FREI, and KELLER sent Federal Express packages relating to Wegelin's U.S. taxpayer-client business to addresses in the United States, including a Federal Express package from Wegelin to FREI at a hotel in Manhattan on or about August 14, 2007.

(Title 18, United States Code, Section 371.)

### COUNT TWO
**(Obstructing and Impeding the Due Administration
Of the Internal Revenue Laws)**

The Grand Jury further charges:

143. The allegations in paragraphs 1 through 137 and 142 of this Indictment are repeated and realleged as though fully set forth herein.

144. From at least in or about 2002 up through and including in or about 2011, in the Southern District of New York and elsewhere, MICHAEL BERLINKA, the defendant, did corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of the Internal Revenue Laws, to wit, BERLINKA engaged in a corrupt endeavor to, among other things, conceal from the IRS undeclared accounts owned by U.S. taxpayers at Wegelin.

(Title 26, United States Code, Section 7212(a) and
Title 18, United States Code, Section 2.)

### COUNT THREE
(Obstructing and Impeding the Due Administration
Of the Internal Revenue Laws)

The Grand Jury further charges:

145. The allegations in paragraphs 1 through 137 and 142 of this Indictment are repeated and realleged as though fully set forth herein.

146. From at least in or about 2002 up through and including in or about 2011, in the Southern District of New York and elsewhere, URS FREI, the defendant, did corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of the Internal Revenue Laws, to wit, FREI engaged in a corrupt endeavor to, among other things, conceal from the IRS undeclared accounts owned by U.S. taxpayers at Wegelin.

> (Title 26, United States Code, Section 7212(a) and
> Title 18, United States Code, Section 2.)

### COUNT FOUR
(Obstructing and Impeding the Due Administration
Of the Internal Revenue Laws)

The Grand Jury further charges:

147. The allegations in paragraphs 1 through 137 and 142 of this Indictment are repeated and realleged as though fully set forth herein.

148. From at least in or about 2002 up through and including in or about 2011, in the Southern District of New York

and elsewhere, ROGER KELLER, the defendant, did corruptly
obstruct and impede, and endeavor to obstruct and impede, the
due administration of the Internal Revenue Laws, to wit, KELLER
engaged in a corrupt endeavor to, among other things, conceal
from the IRS undeclared accounts owned by U.S. taxpayers at
Wegelin.

       (Title 26, United States Code, Section 7212(a) and
           Title 18, United States Code, Section 2.)

_____
FOREPERSON

_Preet Bharara_
_____
PREET BHARARA
United States Attorney

58